IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DUJUAN J.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-cv-614-DWD |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, now represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB in February 2017, alleging disability beginning on October 17, 2016, due, in part, to his diabetes mellitus and peripheral neuropathy (Tr. 222). Plaintiff's date last insured was December 31, 2017 (Tr. 17). Plaintiff's claim was denied initially on April 24, 2017 (Tr. 123), and upon reconsideration on July 20, 2017 (Tr. 125). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 6, 2019 (Tr. 52). Plaintiff personally appeared and testified at the hearing but was not represented by counsel (Tr. 54-55). Vocational expert James E. Bordieri also

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

1

appeared and gave testimony (Tr. 94-96). ALJ Michael S. Worrall denied the application for benefits in a decision dated April 26, 2019 (Tr. 15-26). The Appeals Council denied Plaintiff's request for review on April 29, 2020, making the ALJ's decision the final agency decision subject to judicial review (Tr. 1). 42 U.S.C. § 405(g); *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017); *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

## Legal Standards

Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*; *see also Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). Judicial review of the ALJ's decision is limited to determining whether the decision is "both supported by substantial evidence and based on the proper legal criteria." *Briscoe,* 425 F.3d at 351 (citing *Scheck v. Barnhart*, 336 F.3d 697, 699 (7th Cir. 2004); *Stephens*, 888 F.3d at 327 (The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law.").

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836–37 (7th Cir. 2014). Even if reasonable minds could differ as to whether the claimant is disabled, courts must defer to the ALJ's resolution if the opinion is adequately explained and supported by substantial evidence. *Beardsley*, 758 F.3d at 837; *Elder*, 529 F.3d at 413.

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. This duty is enhanced when a claimant appears without counsel; then the ALJ must

"scrupulously and conscientiously [ ] probe into, inquire of, and explore for all the relevant facts." *Thompson v. Sullivan*, 933 F.2d 581, 585-86 (7th Cir. 1991) (internal citations and markings omitted). Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

## **The ALJ's Decision**

The ALJ followed the five-step analytical framework described above. Plaintiff was insured for DIB through December 31, 2017 (Tr. 17, 25). Plaintiff was 37 years old on the date last insured (Tr. 24). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability (Tr. 17). The ALJ found that Plaintiff had severe impairments of insulin-dependent diabetes mellitus, diabetic peripheral neuropathy, morbid obesity, hypertension, and thrombophlebitis (Tr. 17). The ALJ concluded that these impairments did not meet or equal a listed impairment (Tr. 18).

The ALJ found that Plaintiff had a residual functional capacity ("RFC") to "lift and carry 20 pounds occasionally and 10 pounds frequently [,] sit for six hours in an eight-hour workday, . . . stand and walk for two hours in total in an eight-hour workday [and] push and pull as much as he can lift and carry." (Tr. 19). At step four, the ALJ relied on

4

the testimony of a vocational expert ("VE") to find that Plaintiff was capable of performing his past relevant work as an office assistant/office clerk as Plaintiff actually performed it (Tr. 24). As an alternative finding for step five, the ALJ found there were other jobs existing in the national economy that Plaintiff was able to perform (Tr. 24-25). Accordingly, the ALJ found Plaintiff was not disabled from the alleged onset date, October 17, 2016, through the date last insured, December 31, 2017 (Tr. 25).

## Discussion

Plaintiff raises one argument in favor of remand: that the ALJ improperly evaluated Plaintiff's subjective statements about his need to elevate his lower extremities (Doc. 21).

At the evidentiary hearing, Plaintiff testified that he was unable to work because of his neuropathy pain, swelling in his legs, and because the pain medications he would take caused him to be drowsy (Tr. 76-78). Specifically, as to his legs, Plaintiff testified that his legs swell "every day all of the time that they're not reclined and put up" and that he elevated his legs six to six-and-a-half hours in an eight-hour period (Tr. 79-80). The ALJ discounted these statements, finding that Plaintiff's impairments were "not as severe as [Plaintiff] alleged." (Tr. 21). Plaintiff takes specific issue with the following statement:

> [Plaintiff] is able to perform robust activities of daily living, including caring for his daughter, preparing simple meals, performing his personal care, doing household chores, driving, going to the store, controlling his finances, spending time with others, and getting along with authority figures. He also testified that he plays in the church band, and attends church regularly. This evidence leads the undersigned to believe that the claimant's impairments are not as severe as he alleged.

(Tr. 21). The ALJ also noted that Plaintiff was not always compliant with his treatment, including medications and diet, and did not follow up with referrals to an orthopedist, endocrinology, or ophthalmology (Tr. 20-21). The ALJ further determined that Plaintiff "subsequently improved" from 2014 to 2016 because Plaintiff did not seek further treatment from his doctor after he was first instructed to elevate his legs in August 2014, and then "returned to substantial gainful activity in 2015 and 2016." (Tr. 21).

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's subjective complaints by misstating Plaintiff's testimony about his daily living activities and by otherwise failing to provide a coherent explanation for discounting Plaintiff's statements. In response, Defendant argues that the ALJ's findings concerning Plaintiff's subjective complaints were substantially supported by the record. Specifically, Defendant presents that no medical opinion opined on Plaintiff's conditions and a need to elevate his legs. Defendant also argues that the ALJ's findings were supported by (a) Plaintiff's testimony that he could engage in social activities, (b) Plaintiff's successful completion of employment from 2014-2016, and (c) due to Plaintiff's noncompliance with medical treatment (Doc. 26, pp. 10-14).

An ALJ's subjective symptom evaluation will be upheld unless it is "patently wrong." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2017)). A two-step process governs the ALJ's evaluation of a claimant's description of his pain and symptoms. *See* Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016); 20 C.F.R. §§ 404.1529; 416.929. First, the ALJ "must consider whether there is an underlying medically determinable physical

6

or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.* In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citing *Steele*, 290 F.3d at 941-42); *see also* 20 C.F.R.§ 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029, at *7.

Here, the ALJ found that Plaintiff's impairments "could reasonably be expected to cause some of his alleged symptoms" (step one), but he concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of his symptoms are not fully consistent with the medical and other evidence in the record." (step two) (Tr.23). The ALJ offers the following explanation to support his assessment: Plaintiff's assertions "are not supported by his infrequent medical treatment, the relative absence of objective findings during the relevant period, or by any medical opinion of record[, and t]he record indicates the claimant has [not] been fully compliant with his prescribed treatment in terms of exercise and diet." (Tr. 23). The ALJ also discounted Plaintiff's subjective complaints because of Plaintiff's "robust activities of daily living" and his return to substantial gainful activity in 2015 and 2016 (Tr. 21). Because these reasons are legally

7

insufficient and not supported by substantial evidence, remand is warranted. *See Ghiselli v. Colvin*, 837 F.3d 771, 778-79 (7th Cir. 2016).

Initially, the Court notes that an ALJ may not disregard or discount a claimant's testimony "simply because it is not corroborated by objective medical evidence." *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) (citing *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) and *Pierce v. Colvin*, 739 F.3d 1046-1049-50 (7th Cir. 2014) ("An ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results."); *Villano*, 556 F.3d at 562 (An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it."); *see also Thomas v. Colvin*, 745 F.3d 802, 806–07 (7th Cir. 2014) (A "lack of medical evidence supporting the severity of a claimant's symptoms is insufficient standing alone, to discredit her testimony."); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003).

Moreover, before drawing any negative inferences about a claimant's condition from his failure to obtain treatment or to follow a treatment plan, the ALJ must explore the claimant's explanations as to the lack of medical care. *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) (quoting *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (citing SSR 96-7p, superseded by SSR 16-3p); *see also Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015). Social Security Rule 16-3p instructs that an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record . . . without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3, 2016 WL 1119029, at *8. Some possible reasons

8

the ALJ may consider for a claimant's lack of medical treatment include whether the claimant structures his day to minimize symptoms by avoiding physical activities, an inability to afford treatment, and medical sources that have informed claimant that no further effective treatments are available. *Id*. at *9. In sum, an ALJ "must first explore the claimant's reasons for the lack of medical care before drawing a negative inference" by, for instance questioning the claimant "to determine whether there are good reasons he does not seek medical treatment." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (internal quotations omitted).

Here, the ALJ drew a negative inference as to Plaintiff's condition from his lack of medical care and noncompliance with treatment. However, the ALJ did not question Plaintiff about his lack of treatment or medical noncompliance during that period. There is also little indication in the record that the ALJ considered the notes in Plaintiff's medical records stating that Plaintiff had been unable to afford medical treatment and had issues with his insurance coverage.[2] Specifically, relevant to the suggested factors in SSR 16-3p, Plaintiff's testimony indicated that he did not seek certain medical treatment because he had been informed that his neuropathy pain was irreversible so surgery could not be done on some affected areas (Tr. 76, 86). Plaintiff also testified that he could not complete a sleep study because it was cost prohibitive (Tr. 89).

---

[2] The ALJ did acknowledge "that insulin may be expensive" but otherwise did not explore Plaintiff's reasons for not complying with his prescribed treatment (Tr. 21). The ALJ also summarized some of the medical records which indicated Plaintiff was struggling to afford his medication in connection with his summary of Plaintiff's medical records (Tr. 22-23). However, the ALJ did not specifically address these statements in arriving at his subjective symptom evaluation.

9

Further, multiple medical records indicated that Plaintiff had issues with his insurance company and financial issues in obtaining insulin. *See* Tr. 352 (Physician Assistant Harriman observed that Plaintiff had not followed thru with his appointment to see an endocrinologist and Plaintiff stated that he has trouble with his insurance company and figuring out who is in network); Tr. 373 (Plaintiff was instructed to follow up for financial assistance in obtaining insulin); Tr. 397 (Dr. Hidalgo noted that Plaintiff was having financial issues and unable to obtain his insulin); Tr. 436 (Dr. Baker noted that Plaintiff has issues with his insurance coverage in obtaining insulin); Tr. 439 (Physician Assistant Harriman observed that Plaintiff's diabetes was not controlled due to Plaintiff's noncompliance and financial situation, and suggesting coupon for lowering cost of insulin); Tr. 499 (Dr. Baker notes that Plaintiff did not take his insulin as prescribed for several months "because he could not afford it and was trying to make it last longer").

The ALJ did not explore this evidence, or at least there is no indication in the record that he did. The failure to explore this evidence was a legal error. *Gerstner v. Berryhill*, 879 F.3d 257, 265 (7th Cir. 2018); *Garcia v. Colvin*, 741 F.3d 758, 761-762 (7th Cir. 2013). Remand is therefore warranted. *See Hill v. Colvin*, 807 F.3d 862 (7th Cir. 2015); *Beardsley v. Colvin*, 758 F.3d 834, 840–41 (7th Cir. 2014) (finding error where the ALJ "made no evident attempt to determine why [plaintiff] elected not to have expensive and invasive surgery on her knee and instead opted for the injections" before drawing a negative inference).

The ALJ also erred in dismissing Plaintiff's subjective symptom statements because of Plaintiff's ability to perform basic daily activities without explaining how

these activities undermined Plaintiff's allegations. While an ALJ is directed to consider a claimant's daily activities when evaluating his description of symptoms, *see* SSR 16-3p, 2017 WL 5180304 at *7 (republishing SSR 16-3p, 2016 WL 1119029, *1), the ALJ must explain why any perceived inconsistencies undercut his allegations unless the inconsistencies are so obvious that no explanation is necessary. *Cullinan*, 878 F.3d at 603 (finding error where "the ALJ did not explain why doing [ ] household chores was inconsistent with [plaintiff's] description of her pain and limited mobility" and no inconsistency was obvious).

Here, the ALJ did not explain how Plaintiff's ability to care for his daughter, prepare simple meals, perform personal care, do household chores, drive, shop, control his finances, spend time with others, play in the church band, and attend church regularly (Tr. 21) is inconsistent with Plaintiff's alleged pain and limitations. An ALJ cannot use a claimant's "successful performance of life activities as a basis to determine that [his] claims of a disabling condition were not credible" "without acknowledging the differences between the demands of such activities and those of a full-time job. *Ghiselli*, 837 F.3d 778; *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). But that is what the ALJ has done here.

Finally, the Seventh Circuit has cautioned that a claimant's desire to return to work, and even a brief return to work, on their own, are not evidence that the claimant embellished his pain. *Gerstner v. Berryhill*, 879 F.3d 257, 265 (7th Cir. 2018) ("a claimant who looks for work after claiming a painful disability may have "a strong work ethic or overly-optimistic outlook rather than an exaggerated condition."); *Ghiselli v. Colvin*, 837

11

F.3d 771, 778 (7th Cir. 2016); *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015); *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) ("We have recognized that even persons who *are* disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits.") (emphasis in original).

The errors set forth above are significant enough that the Court cannot confidently say that the ALJ would have made the same subjective symptom evaluation had he not made these errors. *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). Errors in a subjective symptom evaluation are not harmless unless a claimant's testimony is incredible on its face or the ALJ indicates that he would have made the same determination even if the questioned circumstances were different and he adequately backs up that position. *See Allord* at 821–22; *Pierce*, 739 F.3d at 1051. Here, the ALJ's decision does not indicate that either exception applies. For these reasons, the ALJ failed to "build an accurate and logical bridge" from the evidence to his conclusion. *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (internal quotations omitted). And because the ALJ did not support his subjective symptom evaluation with substantial evidence or a legally proper analysis, it "must be considered patently wrong," requiring remand. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016).

Although the Court does not hold that the ALJ should have found Plaintiff's subjective allegations fully credible, the foundation underlying his negative assessment was inadequate. Greater elaboration is necessary to ensure a full and fair review of the evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Further, this Memorandum and Order should not be construed as an indication that the Court believes

that Plaintiff was disabled during the relevant period or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. §405(g) for further proceedings consistent with this opinion.

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**SO ORDERED.**

Dated: July 27, 2021

_____
DAVID W. DUGAN
United States District Judge